NO









NO. 12-09-00254-CR

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

 

JOSHUA HAROLD GOLMON,

APPELLANT                                                     '     APPEAL
FROM THE 173RD

 

V.                                                                         '     JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,                                 '     HENDERSON
COUNTY, TEXAS

APPELLEE

 





MEMORANDUM
OPINION

            Joshua
Harold Golmon appeals his conviction for aggravated sexual assault of a child,
for which he was sentenced to imprisonment for fifty years.  In two issues,
Appellant contends that (1) an impermissibly suggestive photographic lineup was
improperly admitted into evidence and (2) the evidence is legally insufficient
to support the trial court’s judgment.  We affirm.

 

Background

            On
or about March 27, 2008, M.L., a twelve-year-old child, reported that she was
sexually assaulted.  According to M.L., a white male with tattoos on his arms
and neck, who was driving a white Chevrolet Trailblazer, abducted her. 
Thereafter, the man drove her to a remote field near County Road 2832 in
Henderson County, Texas.  Once there, he removed M.L. from the vehicle, struck
her when she tried to escape, threatened to shoot her, and sexually assaulted
her.  M.L. later identified Appellant in a photographic lineup.

            Appellant
was charged by indictment with aggravated sexual assault and pleaded “not
guilty.”  The matter proceeded to a jury trial.  Ultimately, the jury found
Appellant “guilty” as charged.  The matter proceeded to a bench trial on
punishment, after which the trial court sentenced Appellant to imprisonment for
fifty years.  This appeal followed.

 

 

 

Photographic Lineup

            In
his first issue, Appellant argues that the photographic lineup by which M.L.
identified him was impermissibly suggestive and, as a result, there was a great
likelihood that he was misidentified as her assailant.  Thus, Appellant
contends, the trial court erroneously admitted the photographic lineup into
evidence.

Standard
of Review

We
defer to a trial court's determination of historical facts supported by the
record when the trial court finds facts based upon an evaluation of the
credibility and demeanor of the witnesses.  Loserth v. State, 963
S.W.2d 770, 772 (Tex. Crim. App. 1998).  We similarly defer to the trial
court's rulings on mixed questions of law and fact when they turn on the
credibility of witnesses.  Id.  We review de novo mixed questions
of law and fact that do not turn on an evaluation of credibility and demeanor. 
Id. at 772–73.  Here, the admission of the photo array does not
turn on a credibility evaluation, and, therefore, we review it de novo.

The
Identification Procedure

A
pretrial identification is inadmissible when (1) it is impermissibly suggestive
and (2) gives rise to a substantial likelihood of irreparable misidentification
at trial.  See Loserth v. State, 985 S.W.2d 536, 543–44
(Tex. App.–San Antonio 1999, pet. ref’d).  Appellant must demonstrate the
existence of both elements by clear and convincing evidence.  See id.

Neither
due process nor common sense requires that the individuals in a lineup exhibit
have features exactly matching those of the accused.  Turner v. State,
600 S.W.2d 927, 933 (Tex. Crim. App. 1980); Colgin v. State, 132
S.W.3d 526, 532 (Tex. App.–Houston [1st Dist.] 2004, pet. ref’d).   Rather, a
photo array must contain individuals who fit a rough description of the
suspect.  Wilson v. State, 15 S.W.3d 544, 553 (Tex. App.–Dallas
1999, pet. ref'd). 

Here,
Appellant contends that the photo array was impermissibly suggestive because he
was the only person in the six person array with tattoos on his neck.  The
State stipulates that Appellant’s neck tattoos are visible in the picture, but
contends that this discrepancy is small and not obvious in the photograph.  We
have observed a color copy of the photographic lineup in the record.  Based on
our review of this evidence, we conclude that the description of Appellant’s
neck tattoos as “small” and “not obvious” is a generous description.  In fact,
the tattoos on Appellant’s neck are barely visible and very unlikely to be
noticed unless the observer is alerted to their existence.  These tattoos could
be, in this court’s opinion, easily mistaken for a shadow or hair on
Appellant’s neck.  Each of the men in the photographic array appear to be
Anglo-American, are dressed in casual civilian clothes, exhibit some facial
hair, have short, dark hair, and appear similar to Appellant in age, size, and
build.  Moreover, in each picture, there is a small degree of shadowing along
the neckline similar to what the State stipulates are visible neck tattoos in
Appellant’s picture.  Therefore, based on our review of the evidence in this
case, we conclude that the photo array at issue was not impermissibly
suggestive.  Thus, we hold that the trial court did not err in introducing the
photographic lineup into evidence.  Appellant’s first issue is overruled.

 

Legal Sufficiency

            In
his second issue, Appellant argues that the evidence is legally insufficient to
support the trial court’s judgment.  Appellant concedes that there is evidence
to support each element of the offense of aggravated sexual assault.  However,
Appellant contends that this evidence does not rise to the level to allow the
jury to find that Appellant was guilty beyond a reasonable doubt.

Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  Jackson v.
Virginia, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d
560 (1979); Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San
Antonio 1999, pet. ref'd).  The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993).  The evidence is examined in the light most
favorable to the jury’s verdict.  Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Johnson, 871 S.W.2d at 186.  A successful legal sufficiency
challenge will result in rendition of an acquittal by the reviewing court.  See
Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18,
72 L. Ed. 2d 652 (1982).

Our
role is that of appellate review, and the fact finder is the sole judge of the
weight and credibility of a witness’s testimony.  See Wesbrook v.
State, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000).  The fact finder
may choose to believe all, some, or none of a witness’s testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Moreover,
the legal sufficiency of the evidence is measured against the elements of the
offense as defined by a hypothetically correct jury charge. Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would
include one that “accurately sets out the law, is authorized by the indictment,
does not unnecessarily increase the State's burden of proof or unnecessarily
restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried.”  Malik,
953 S.W.2d at 240.

In
the case at hand, to support Appellant=s
conviction for aggravated sexual assault of a child, the State was required to
prove that Appellant intentionally or knowingly caused the sexual organ of
M.L., a child, to contact his sexual organ.  See Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii) (Vernon Supp.
2009).  We note that the testimony of a child sexual offense victim alone is
sufficient to support a conviction for aggravated sexual assault.  See Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon 2005); Martinez v. State, 178 S.W.3d 806, 814 (Tex. Crim.
App. 2005); Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App.
1978). 

M.L.
testified as the State’s first witness.  M.L. stated that she was twelve years
old at the time in question.  M.L. further stated that she was walking home
from a friend’s house when she saw a white Chevrolet Trailblazer stop on the
side of the road.  M.L. testified that she continued to walk and even increased
her pace, but that a man grabbed her and placed her in the front seat of the
white Chevrolet Trailblazer.  According to M.L., the man, whom she described as
a white male with dark hair and tattoos on his arms and neck, drove to a house
he told her belonged to his cousin.  M.L. testified that when the man’s cousin
did not respond to numerous honks of M.L.’s car horn or a call from his
cellular telephone, her abductor drove her into a remote field.  When the man
stopped the car, M.L. exited the car and attempted to escape only to be caught
before she could reach the road.  The man took her back to the area by his
vehicle and struck her in the lip.  According to M.L., the man told her to
remove her pants.  M.L. testified that she initially refused to comply, but
when the man threatened to shoot her, she relented and removed her pants and
underwear.  M.L. stated that the man, who had removed his pants and placed a
plastic bag over his “private part,” pushed her to the ground, got on top of
her, and put his “private part” inside her vagina.  M.L. testified that the man
eventually got back into his truck and drove off, striking her leg and her side
as he departed.  

Sheriff’s
deputy Robert Powers testified concerning his investigation of the scene on the
night in question.  Powers stated that he located a red cellular telephone in a
black carrying case in a ditch off the roadway at or near the scene.  Powers
also stated that he located a small pair of pink women’s underwear at the
scene.  

Henderson
County Sheriff’s Department Major Kevin Hanes testified that he was able to
call another cellular phone from the phone located at the scene to ascertain
the telephone number associated with the phone found at the scene.  He also
stated that Appellant later told him his cellular phone number.  Hanes further
testified that, through a subpoena, he was able to get records from the
cellular telephone carrier related to the phone found at the scene.  Hanes
stated that those records indicated that the phone found at the scene belonged
to Appellant.  Hanes further stated that he went to Appellant’s place of
business to serve the arrest warrant.  According to Hanes, Appellant was not at
work that day.  However, Hanes testified that Appellant’s boss informed him
that Appellant drove a white Chevrolet Trailblazer.  Hanes also testified
concerning the photographic lineup he conducted pertaining to the case at
hand.  Hanes stated that when M.L. was presented with the photographic lineup,
she immediately circled Appellant’s picture.  Hanes further made an in-court
identification of Appellant as the same person M.L. had circled in the
photographic lineup.

Examining
the aforementioned evidence in the light most favorable to the jury’s verdict,
we conclude that the jury could have reasonably determined beyond a reasonable
doubt that Appellant intentionally or knowingly caused the sexual organ of
M.L., a child, to contact his sexual organ.  Therefore, we hold that the
evidence is legally sufficient to support the jury=s verdict.  Appellant=s second issue is overruled.

 

Disposition

            Having
overruled Appellant’s first and second issues, we affirm the
trial court’s judgment.

                                                                                                    
SAM GRIFFITH    

                                                                                                             
Justice

Opinion delivered September 1, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

(DO NOT PUBLISH)