

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00025-CR

RICKY DEAN STANFIELD, APPELLANT

V.

THE STATE OF TEXAS

On Appeal from the Criminal District Court 2
Tarrant County, Texas,
Trial Court No. 1619240R, Honorable Wayne F. Salvant, Presiding

December 29, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Ricky Dean Stanfield, was convicted by a jury of three counts of aggravated sexual assault of a child, A.S., and two counts of indecency with the same child.[1] The jury assessed a 60-year prison term for each of the three sexual assaults and a 20-year term for each indecency. All sentences were to run concurrently. On appeal,

---

[1] To protect the privacy of the victim, we refer to her by her initials.

appellant contends that (1) the State's evidence was insufficient to support his convictions and (2) the trial court abused its discretion when it did not permit him to elicit evidence from a community supervision officer during the punishment phase about a sex offender's obligation to register as such. We affirm.[2]

*Background*

In November 2019, an indictment issued alleging that on or about February 7, 2002, appellant, A.S.'s adopted father, intentionally or knowingly (1) caused his sexual organ to contact A.S.'s sexual organ, (2) caused his sexual organ to contact A.S.'s anus, (3) caused his mouth to contact A.S.'s sexual organ, (4) with the intent to arouse or gratify the sexual desire of any person, engaged in sexual contact by touching A.S.'s genitalia, and (5) causing her to touch his genitalia. At trial, A.S. testified that the sexual abuse started when she was approximately five years old and continued until she was approximately eleven or twelve years old.

At first, appellant touched her vagina with his hand underneath her clothes and later, when she was sleeping in her parents' bed, touched her vagina with his penis nearly every week. When this occurred, he laid behind her in bed and eventually ejaculated. Later still, he entered her room, removed her clothes, and attempted to put his penis in her anus. When he encountered difficulty, he stopped and then began touching her vagina with his penis.

When she was in elementary school, appellant took her to a room where he worked, put his finger in her vagina and put his mouth on her vagina on a recurring basis.

---

[2] Because this appeal was transferred from the Second Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

He required that she touch herself each time and then touch his penis until he ejaculated. Afterwards, he would sometimes buy her toys or give her special privileges, e.g., allowing her to stay up late or play outside with friends.

The last time she was sexually abused at his workplace, he touched his penis on her vagina, and asked her if she wanted him to stop because she was getting too old. She said she wanted him to stop, and he responded that he would but that if she ever needed him or wanted to do it again, he was there. He also threatened that if she told anyone, she would get into trouble or he would be sent away for a very long time and the family would be homeless.

In 2017, A.S. met with Katie Barton, an investigator with the district attorney's office, and told Barton that appellant had sexually abused her. Barton suggested A.S. call appellant and confront him. During that recorded call, appellant confirmed there was contact between his hand and her vagina and contact between her hand and his penis. He explained he was just trying to make her feel good.

A.S. subsequently made an outcry to Detective Jonathan Stieg when A.S. gave a written statement explaining in detail when and how she was sexually abused. In addition to corroborating her testimony at trial, Detective Stieg testified she told him that appellant threatened that if she told anyone of the abuse, he would go away for a long time and she would be in trouble. He also attempted to elicit a promise from her not to tell anyone about the abuse.

*Issue One – Legal Sufficiency*

To reiterate, appellant first contends that the evidence was legally insufficient to support his conviction for aggravated sexual assault of a child under fourteen years of age. The pertinent standard of review is discussed in *Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013). In applying it here, we overrule the issue.

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes (1) the penetration of the anus of the child by any means, (2) penetration of the mouth of the child by the actor's sexual organ, (3) the sexual organ of the child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, (4) the child's anus to contact the mouth, anus or sexual organ of another person including the actor, or (5) the child's mouth to contact the anus or sexual organ of another person, including the actor. *See* TEX. PENAL CODE ANN. § 22.021.

The uncorroborated testimony of a child victim is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07; *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005) (noting article 38.07 deals with the sufficiency of evidence required to sustain a conviction for certain sexual offenses). The State has no burden to produce corroborating or physical evidence. *Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd,* 206 S.W.3d 620 (Tex. Crim. App. 2006). Likewise, a child victim's outcry statement alone may be sufficient to support a sexual assault conviction. *See Jones v. State*, 428 S.W.3d

4

163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

A.S.'s testimony as well as her outcry to Detective Stieg satisfy the test espoused in *Temple.* As described above, she testified to escalating sexual abuse from the time she was approximately five years old until she was eleven or twelve years old. The abuse included appellant causing his penis to contact her vagina and her anus, his mouth to contact her vagina; and appellant engaging in touching her genitalia and causing her to touch his genitals until he was aroused to the point of ejaculation. The jury chose to believe the victim, and we defer to its credibility choices.

*Issue Two – Exclusion of Evidence at Punishment Trial*

Next, during the punishment trial, appellant called Sawaki Samuels, a community supervision officer, as a witness, and during direct examination, appellant requested that he be allowed to elicit evidence from Samuels that appellant would be required to register as a sex offender. The State objected, asserting that such evidence was irrelevant because appellant's convictions required that he register as a matter of law. As such, the jury would not be required to decide whether appellant would be required to register. The trial court ultimately agreed with the State and barred appellant from soliciting the evidence. Appellant asserts the trial court abused its discretion in so ruling.[3]

Generally, we review the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard*. Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim.

---

[3] Due to his convictions, appellant was required to register as a sex offender as a matter of law under the applicable provisions of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.001(5), 62.051(a).

5

App. 2010). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). Should that discretion be abused, we must assess its harmful effect, if any. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

Evidentiary errors generally constitute non-constitutional error, the potential harm of which we review under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373. Per that rule, non-constitutional error is disregarded unless it affects a criminal defendant's "substantial rights." *See* TEX. R. APP. P. 44.2(b); *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). That is, an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's decision. *Casey*, 215 S.W.3d at 885. Assuming *arguendo* that trial court's exclusion of evidence was error, our examination of the entire record per *Casey* leads us to a fair assurance that error, if any, did not have a substantial and injurious effect or influence on the jury's punishment decision.

Samuels testified to numerous conditions of community supervision that applied and could possibly apply if the jury granted appellant community supervision. He also testified that appellant would be closely supervised and subject to home visitations at least once a month. There would be restrictions on whom he could associate with and where he could live and work. It was also disclosed that he would be required to abstain from alcohol, illicit drugs, and be subject to testing to verify his abstention. That he would report to his community supervision officer on a regular basis and potentially be subject to GPS monitoring of his daily activities was also mentioned. Through other evidence the

jury was informed that he (1) would not be allowed to have contact with the victim, (2) could be subject to exclusion from certain geographic areas where children were prone to congregate, (3) would be required to undergo extensive therapy that might involve behavior modification, (4) could be incarcerated by the court to undergo such treatment, and (5) would experience restrictions upon and monitoring of his internet and cell phone use. Nor can we ignore the likelihood of a rational jury considering the nature of his crimes as egregious and not meriting probation, especially when he evinced a willingness to continue them. The foregoing circumstances led us to conclude that pretermitting appellant from presenting evidence of one other restriction he faced if granted probation was harmless. Accordingly, appellant's second issue is overruled.

We affirm the trial court's judgments of conviction as to each count.


Per Curiam

Do not publish.