

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00018-CR

---

FREDINAND UZODIMA ANYANWU, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1734608

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Tarrant County jury convicted Fredinand Uzodima Anyanwu of two counts of indecency with a child by contact and assessed punishment at seven years' imprisonment for the first count and thirteen years' imprisonment for the second count. *See* TEX. PENAL CODE ANN. § 21.11. On appeal, Anyanwu argues that the trial court erred by determining that a family friend was the proper outcry witness.[1] Because we find no abuse of discretion in the trial court's ruling, we affirm its judgment.

## I. Standard of Review

"We review a trial court's ruling on an outcry witness designation for an abuse of discretion." *Espinoza v. State*, 571 S.W.3d 427, 430 (Tex. App.—Fort Worth 2019, pet. ref'd) (citing *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990)). "A trial court's findings will be upheld when they are supported by the evidence, and the trial court has broad discretion in determining such evidence's admissibility." *Id.* at 430–31 (citing *Garcia*, 792 S.W.2d at 92).

"Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements [guarantee] their reliability." *State v. Sanchez*, No. 02-24-00254-CR, 2025 WL 1006287, at *5 (Tex. App.—Fort Worth Apr. 3, 2025, no pet. h.) (alteration in original) (quoting *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005)). "Article 38.072, also

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

known as the outcry statute, creates a hearsay exception in certain child-sexual-offense prosecutions" like the one in this case. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.072).

"Article 38.072 permits testimony from one outcry witness per event—that is, 'the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense.'" *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)). "Courts construe 'about the offense' to mean a statement that 'in some discernible manner describes the alleged offense.'" *Id.* (quoting *Garcia*, 792 S.W.2d at 91). "'[T]he statement must be more than . . . a general allusion' of sexual abuse." *Id.* (alteration in original) (quoting *Garcia*, 792 S.W.2d at 91).

"Thus, the proper outcry witness is not necessarily the first adult to whom the child revealed the abuse but, rather, the first adult to whom the child revealed specific details concerning the offense." *Id.* at *6 (quoting *Garcia*, 792 S.W.2d at 91). "A trial court may allow hearsay testimony from more than one outcry witness if each witness testifies about different offenses." *Id.*; *see West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd) ("Because of the way in which the statute is written, an outcry witness is not person-specific, but event-specific.").

## II.    Factual and Procedural Background

Here, the State alleged two events. In the first count of its indictment, the State alleged that Anyanwu, with intent to arouse or gratify his sexual desire, touched the child victim's genitals. In the second count, the State alleged that Anyanwu, with intent to arouse or gratify his sexual desire, touched the child victim's breasts.

3

At the pretrial hearing to determine the proper outcry witness, the trial court heard from the victim, Jennifer,[2] who was sixteen at the time of the offense. Jennifer testified that her mother was the first adult she spoke to about the abuse. According to Jennifer, she did not provide any specific details about what happened but only told her mother that she "was touched inappropriately by [Anyanwu]."

Jennifer clarified that she also spoke to her mother's best friend, Heidi, and told her that Anyanwu "was touching up on [her] during the night" and revealed additional details to Heidi about the abuse. Jennifer said she told Heidi that Anyanwu "touched [her] breasts . . . the triangle before the slit . . . the beginning part of [her] vagina as well as . . . [her] rear end" with his hands, mouth, and forearm. When asked if she had a conversation with anyone else over eighteen about "what happened in specific detail," Jennifer answered, "No."

During cross-examination, Jennifer testified that she had subsequently spoken with an interviewer and said that she had told her mother that Anyanwu "touched [her] inappropriately, grabbed [her] boobs and butt and other parts of her body." Jennifer testified that, even so, she "did not go into detail" but, on further questioning, said she told her mother that her "breasts were groped" and that Anyanwu "tried to get into [her] vagina." Jennifer said she revealed more details to Heidi, including that he had touched her breasts, "pubic hair[,] and other areas" and had "sucked on . . . [her] breast."

Jennifer's mother, Nadine, testified that Jennifer said Anyanwu "was touching her," and she "tried to ask [Jennifer] to elaborate exactly" but she "was so scared to talk much about it."

---

[2]We use pseudonyms for the child and witnesses to protect the identity of the child. *See* TEX. R. APP. P. 9.10.

4

As a result, Nadine said that Jennifer did not provide any details until after she had spoken with Heidi. Nadine clarified that it was only after Jennifer outcried to Heidi that she learned that Anyanwu touched the child's vagina, boobs, butt, and other parts of her body.

Heidi testified that Nadine asked her to pick Jennifer up because "something was off with [Jennifer]," and Nadine "knew [Jennifer] would talk to [Heidi]." According to Heidi, Jennifer said that Anyanwu started touching her in the living room, that "[i]t first started with a hug, him rubbing on her butt, and then it progressed to him rubbing her legs and moving his hand in between her legs." Heidi clarified that Jennifer reported that Anyanwu touched her vagina with his hands. However, Heidi denied that Jennifer reported any touching of her breasts.

After hearing the evidence at the outcry hearing, the State argued that Heidi was the proper outcry witness "in regards to the touching of the vagina" but "concede[d] that there was no mention of breast touch with [Heidi]." Anyanwu argued that Nadine was the proper outcry witness. The trial court determined that Heidi was the proper outcry witness, but only with respect to count one of the State's indictment, which alleged touching of the child's vagina.

## III. Analysis

In his sole issue on appeal, Anyanwu argues that the trial court erred by designating Heidi as the outcry witness because Jennifer indicated she had previously told Nadine that Anyanwu had groped her breasts. Initially, we note that Anyanwu's argument does not properly characterize the trial court's ruling, which only labeled Heidi as the outcry witness for the first count in the State's indictment involving touching of Jennifer's vagina. The evidence at the outcry hearing established that Jennifer had not told Nadine about vaginal touching.

5

Even so, Anyanwu argues that Nadine was the first adult that was informed about the abuse. "The [Texas] [C]ourt of [C]riminal [A]ppeals has interpreted the 'first person' to mean that 'the outcry witness must be the first person, 18 years or older, to whom the child makes a statement that in some *discernible* manner describes the alleged offense.'" *Espinoza*, 571 S.W.3d at 431 (quoting *Garcia*, 792 S.W.2d at 91). "[T]he 'discernible manner' must be 'more than words which give a general allusion that something in the area of child abuse was going on.'" *Id.* (quoting *Garcia*, 792 S.W.2d at 91).

Evidence at the outcry hearing showed that Jennifer initially told Nadine only that she was being inappropriately touched. That statement alluded to abuse in a general, rather than discernable, manner. Even though Jennifer testified that she had told Nadine about touching of her breasts, Nadine denied the outcry and said that she only learned about the details of the touching after Jennifer had spoken to Heidi. Further, the evidence unequivocally established that Heidi was the first adult Jennifer told about Anyanwu's touching of her vagina. Given these facts, we cannot conclude that that the trial court abused its discretion by finding that Heidi was the proper outcry witness with respect to count one of the State's indictment. Accordingly, we overrule Anyanwu's sole point of error.[3]

---

[3]Further, in his brief, Anyanwu "candidly acknowledge[s] to this Court that improper admission of outcry testimony has been held harmless where similar evidence is admitted elsewhere." Although we do not find any error in the trial court's ruling, we note that Jennifer testified in detail and without objection about the sexual abuse Anyanwu inflicted on her.

6

## IV.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    June 11, 2025
Date Decided:      July 16, 2025

Do Not Publish

7