

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1909-11

**MICHAEL JAY BAYS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### GREGG COUNTY

**ALCALA, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON, and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion, in which KEASLER and HERVEY, JJ., joined. HERVEY, J., filed a dissenting opinion, in which KELLER, P.J., and KEASLER, J., joined.**

### O P I N I O N

On the State's petition for discretionary review, we determine that Article 38.072 of

the Texas Code of Criminal Procedure, the outcry statute, is a hearsay exception statutorily

limited to live testimony of the outcry witness.[1] *See* TEX. CODE CRIM. PROC. art. 38.072. The

---

[1] The outcry statute creates a hearsay exception for a child's first outcry of sexual abuse to an adult. TEX. CODE CRIM. PROC. art. 38.072, § 2(a). The statute applies only in prosecutions of specified sexual offenses if committed against a child younger than 14 years of age. *Id*. at § 1. The

(continued...)

child-complainant's own videotaped statement does not meet the requirements for being admitted under that statute. *Id*. Because the trial court impermissibly admitted the child's videotaped statement under the outcry statute, we affirm the court of appeals's judgment reversing the conviction of Michael Jay Bays, appellant, for indecency with a child by contact. *See Bays v. State,* No. 06–10–00115–CR, 2011 WL 6091773, at *6 (Tex. App.—Texarkana Dec. 7, 2011) (not designated for publication); TEX. PENAL CODE § 21.11(a)(1).

## I. Background

Anne[2] was six years old at the time of the incident with appellant, her step-grandfather. Anne and her young relatives, Emily and Charlotte, were watching television

---

(...continued)
statute applies only to out-of-court statements that (1) "describe the alleged offense," (2) are "made by the child," and (3) are "made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." *Id.* at § 2(a). It further requires that the adverse party be notified of the name of the outcry witness, that the adverse party be provided with a "written summary of the statement," that the trial court hold a hearing to determine whether the child's statement is reliable, and that the child testify or be available to testify at trial. *See id.* at § 2(b). If both Subsections (a) and (b) are satisfied, then the child's outcry statement "is not inadmissible because of the hearsay rule." *Id.* Outcry statements are considered substantive evidence of the crime. *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005). The outcry statute has been amended three times since proceedings commenced against appellant. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 284, § 1; Act of May 27, 2009, 81st Leg., R.S., ch. 710, §§ 1-2; Act of April 11, 2011, 82nd Leg., ch. 1, § 2.07. None of these recent amendments alter the statute's application to this case. We shall refer to the current text of the outcry statute.

[2]     To protect the identities of the children involved in this case, the court of appeals employed the pseudonyms "Anne" to refer to the complainant and "Emily" and "Charlotte" to refer to her minor relatives, who were also complainants in two companion cases against appellant. We continue to employ those pseudonyms in this opinion.

with appellant in his living room.[3] While Charlotte and Emily sat across the room from them, appellant touched Anne's genitals as she sat on his lap. When she pushed his hand away, he restrained Anne so that she could not leave. Charlotte started yelling, "He won't let her go, he won't let her go." The commotion was heard by several adults who were outside of the house, including appellant's wife, who is also Anne's grandmother, and Anne's parents.

After the adults entered the house, Charlotte announced that Anne had something to tell everyone, and immediately offered that appellant had touched Anne "down there." Anne's grandmother then privately questioned Anne in another room. Testimony was inconsistent as to what Anne told her grandmother about the incident at that time.[4]

About one year later, Anne and her cousin, Charlotte, each revealed to their mothers that appellant had sexually abused them. Anne, Charlotte and their mothers met to discuss the matter. Anne told the two mothers that appellant had touched her genitals while she was sitting on his lap, and they reported the abuse to the police. During the investigation, police officers asked Kelsey Drennan, an investigator for the Texas Department of Family and Protective Services (TDFPS), to interview Anne, Charlotte and Emily. All three interviews

---

[3] Charlotte is appellant's step-granddaughter and was approximately twelve years old at the time of the incident. Emily is appellant's daughter and was approximately eight years old at the time of the incident.

[4] Anne's grandmother testified that Anne said appellant did not touch her. Anne's mother stated that Anne was embarrassed or shocked and refused to say either way at that time whether appellant had touched her. During Anne's videotaped interview, she stated that she told her grandmother that appellant touched her "tuti-tu" on the day of the incident, but that she didn't tell anyone else at that time because she was confused and "didn't know what to do."

were conducted separately on the same day and were videotaped.

During her interview with Anne, Drennan asked, "Is there anything that we're supposed to talk about?" Anne responded, "Not that I know of." Drennan then asked Anne if anyone had ever tried to look at or touch her "hiney" or "tuti-tu," which was the word used by Anne for her female sexual organ. Anne responded, "just my grandpa, just once, that's all I can remember," referring to appellant. Drennan inquired whether he touched her tuti-tu on the outside or inside of her clothes. Anne replied, "He went inside." She pointed at the waistband of her shorts and made a downward motion to indicate that appellant had reached inside her shorts. To confirm, Drennan asked Anne if appellant touched her on her skin or on top of her clothes, to which Anne replied, "skin." Anne stated that appellant did not put his hand inside her tuti-tu but did touch the surface. Anne stated that the touching occurred while she was sitting "on his lap" on the couch in her grandmother's house.

Appellant was charged with indecency with a child by contact and he pleaded not guilty. The case was tried to the bench along with other accusations of sexual abuse committed against Emily and Charlotte. At trial, the State called Drennan as its designated outcry witness and offered the 30-minute videotape of Anne's interview. Over appellant's hearsay objection, the trial court admitted the recording in its entirety, and it was played for the court. Drennan did not testify about any of Anne's outcry statements; the sole evidence of the statements Anne made to Drennan was the videotape of the interview.

After the videotape was played, Anne testified. Her description of the incident was

largely consistent with that contained in the videotape except she testified that the touching was over her clothes. Anne acknowledged that the touching could have been accidental, but stated that appellant had lied when he said he did not touch her.

In his defense, appellant testified that he could have accidentally touched Anne's genital area on the outside of her clothing while he was playing with her, but he denied that he touched her under her clothes. Disbelieving the defense, the trial court found appellant guilty and sentenced him to ten years' imprisonment.[5]

The court of appeals reversed the conviction. It held that the videotape was inadmissible hearsay that did not fall within the type of hearsay permitted under the outcry statute. *Bays*, 2011 WL 6091773, at *3. Relying on its prior decision in *Dunn v. State*, the court of appeals noted that "the outcry statute does not anticipate or provide for the admission of the video statements." *Id.* (citing 125 S.W.3d 610, 614 (Tex. App.—Texarkana 2003, no pet.)). The court of appeals concluded that the outcry statute does not "contemplate[] that a videotape of the outcry will be introduced. It clearly contemplates that a person, subject to confrontation and cross-examination, will testify about what was said." *Id.*[6] We granted the

---

[5]    Appellant was additionally found guilty of sexual offenses committed against Charlotte, but was acquitted of the indecency charge involving Emily. Appellant's convictions for continuous sexual assault of a child and sexual assault of a child involving Charlotte were affirmed on appeal, resulting in sentences of twenty-five and ten years' imprisonment respectively. *See Bays v. State*, 06–10–00114–CR, 2011 WL 6091757 (Tex. App.—Texarkana Dec. 7, 2011, pet. ref'd).

[6]    The court of appeals found the error harmful because, aside from the recorded interview, "there was not overwhelming evidence of guilt." *Bays v. State,* No. 06–10–00115–CR, 2011 WL 6091773, at *6 (Tex. App.—Texarkana Dec. 7, 2011) (not designated for publication). Specifically,
(continued...)

State's petition for discretionary review to determine whether the court of appeals erred by holding that the outcry statute does not permit the admission of video statements.[7] The State argues that the videotaped interview should be admissible under the outcry statute because the statute does not expressly require that the child's statements be related through witness testimony. The State further argues that the statute's underlying goal of admitting reliable statements is best served by permitting admission of the videotaped interview. In response, appellant argues that the statutory hearsay exception for a child's outcry statements applies only when those statements are conveyed through the testimony of the proper outcry witness, and that other forms of evidence, such as videotapes, do not fall within the hearsay exception for outcry evidence.

## II. Analysis

Both the State and appellant offer conflicting, but plausible, interpretations of the

---

(...continued)
the court of appeals noted that Anne stated in the videotape that appellant touched her genitals under her clothing, but testified at trial that appellant touched her over her clothing. On this basis, the court of appeals concluded that the "erroneous admission of Anne's video interview had a substantial influence on the outcome of the proceeding." *Id*.; *see also* TEX. R. APP. P. 44.2(b). The issue of harm was not raised by the State in its petition, and we do not review the court of appeals's harm analysis in this opinion. Likewise, appellant does not present a challenge under the Confrontation Clause. We note, however, that because both the interviewer, Drennan, and the interviewee, Anne, testified at trial and were subject to cross-examination, the defendant was afforded his rights under the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

[7]     The State's sole ground for review asks, "Does Article 38.72 [sic] of the Texas Code of Criminal Procedure 'clearly contemplate' that an outcry statement will be offered only though an outcry witness, or may a videotape of the child's outcry to that witness be played if both the witness and child are available for cross-examination?"

outcry statute. Because we determine that the statute is ambiguous with respect to what form the outcry evidence must take when introduced at trial, we proceed to consider the appropriate extra-textual factors. We conclude that the statutory hearsay exception for outcry evidence applies only when the child's statements are conveyed through the testimony of the properly designated outcry witness.

**A. Law Applicable to Statutory Interpretation**

Statutory interpretation is a question of law that we review *de novo*. *Nguyen v. State*, 359 S.W.3d 636, 641 (Tex. Crim. App. 2012). In interpreting statutes, we seek to effectuate the Legislature's collective intent and presume that the Legislature intended for the entire statutory scheme to be effective. *See* TEX. GOV'T CODE § 311.021; *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). To achieve this goal, we necessarily focus our attention on the literal text of the statute and attempt to discern the objective meaning of that text at the time of its enactment. *Nguyen*, 359 S.W.3d at 642. If the language is unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add to or subtract from such a statute. *Boykin*, 818 S.W.2d at 785.

If, on the other hand, the meaning of a statute is ambiguous, we may consider limited extra-textual factors to discern the meaning that best honors the will of the Legislature. *Cornet v. State*, 359 S.W.3d 217, 221 (Tex. Crim. App. 2012). Ambiguity exists when a statute may be understood by reasonably well-informed persons to have two or more different

meanings. *See Boykin*, 818 S.W.2d at 785-86; *State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007). In construing ambiguous statutes, relevant factors that we may consider include legislative history, laws on the same or similar subjects, and consequences of a particular construction. *See* TEX. GOV'T CODE § 311.023; *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) (in construing statutes, court may look to other provisions within entire statutory scheme rather than merely single, discrete provision at issue).

**B. Analysis of Article 38.072 Statutory Language**

The outcry statute creates a hearsay exception for a child-complainant's out-of-court "statements" that "describe the alleged offense," so long as those statements were made "to the first [adult] person . . . to whom the child . . . made a statement about the offense." *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(1)-(3). Subsection (b) establishes additional procedural requirements, including that the party intending to offer the statement provide the adverse party with a "written summary of the statement" and the "name of the witness through whom it intends to offer the statement." *See id.* at § 2(b).

With respect to the question of what forms of evidence are admissible under the statute, the phrase "witness through whom it intends to offer the statement" could reasonably be interpreted as indicating that the child's outcry statement must be conveyed directly "through" the testimony of the outcry "witness." *See id.*; MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1360 (10th ed., 1996) (defining "witness" as "one who testifies in a cause or before a judicial tribunal"); *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim. App. 2011)

(court may presume that words not defined in statute are used in their "ordinary and common sense"). Under this interpretation, the outcry statute would permit the "first person" to whom the child made a "statement about the offense" to testify regarding the content of those statements. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a). The statute would not, however, permit the child's statements to be conveyed through other mediums, such as video or audio recordings, because such "statements" would not be properly offered "through" a "witness." *See id.* at § 2(a)-(b).

In support of this interpretation, we note that, although it has never precisely addressed the present question, this Court has repeatedly described the form of outcry evidence admissible under the statute as testimony from a witness. *See, e.g., Sanchez v. State*, 354 S.W.3d 476, 479 n.1 (Tex. Crim. App. 2011) ("An outcry witness may testify . . . about the victim's out-of-court description of the offense."); *Lopez v. State*, 343 S.W.3d 137, 140, 144 (Tex. Crim. App. 2011) (describing outcry statute as permitting "hearsay testimony" from an "outcry witness"); *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005) (outcry "witness may recite the child's out-of-court statements concerning the offense"); *Rodriguez v. State*, 819 S.W.2d 871, 872 (Tex. Crim. App. 1991) (describing outcry statute as permitting "testimony" from "outcry witness"); *Shelby v. State*, 819 S.W.2d 544, 550-51 (Tex. Crim. App. 1991) (noting that outcry witness "permitted to relate to the jury the statements made by the complainant on the date of the offense"); *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990) (outcry witness would "testify as to what the child

[complainant] told her"); *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (outcry statute "demands that only the 'first person' [in whom child confides] is allowed to testify").

Furthermore, the Texas intermediate courts of appeals that have examined this precise question have uniformly determined that the outcry statute limits the form of evidence to testimony from a witness. *See, e.g., Dunn*, 125 S.W.3d at 614 (holding that video testimony not properly admitted under outcry statute because the statute "clearly contemplates that a person, subject to confrontation and cross-examination, will testify about what was said"); *Divine v. State*, 122 S.W.3d 414, 418 (Tex. App.—Texarkana 2003, pet. ref'd) (noting that court has "repeatedly emphasized that a videotape is not a person; therefore, Article 38.072 cannot apply to it"); *Scott v. State*, 222 S.W.3d 820, 831 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that "Article 38.072 does not apply to admission of a child's videotaped interview because it applies to the testimony of a live outcry witness").

The statute, however, is subject to an alternative interpretation. Although the statute clearly contemplates that the child's statements will be offered "through" an outcry "witness," the State argues that this language does not necessarily compel the conclusion that the witness must relate the child's statements through testimony. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(1)(B). Rather, under this latter interpretation, any form of evidence, including a video recording of the child's out-of-court statement, would be admissible, so long as the proper outcry witness was present at trial and could act as a sponsoring witness for that recording. *See id*. at § 2(a)-(b).

The statute, while strongly suggesting that the child's statements will be conveyed through the testimony of the outcry witness, does not expressly exclude forms of evidence other than witness testimony. *See id*. Because the statute may be understood by reasonably well-informed persons to have two meanings, we conclude that the statute is ambiguous. *See Boykin*, 818 S.W.2d at 785-86; *Neesley*, 239 S.W.3d at 783. We proceed to consider the appropriate extra-textual factors. *See Shipp v. State*, 331 S.W.3d 433, 439 (Tex. Crim. App. 2011); *Mahaffey*, 316 S.W.3d at 637; TEX. GOV'T CODE § 311.023.

## C. Extra-textual Analysis

As explained in more detail below, an analysis of the extra-textual factors supports the conclusion that the videotaped interview of the child does not fall within the statutory hearsay exception for outcry evidence.

### 1. Legislative History

The legislative history surrounding the enactment of the outcry statute clearly indicates that lawmakers intended to create a hearsay exception for live, in-court testimony by an outcry witness. When originally enacted in 1985, the statute's supporters noted that the legislation was necessary because adults in whom child sex-abuse victims had confided were "barred from repeating what they have been told because it is considered hearsay." *See* Act of May 27, 1985, 69th Leg., R.S., Ch. 590, § 1, effective Sept. 1, 1985; HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985).[8] The outcry statute

---

[8] The outcry statute has its historical origins in the law of evidence relating to rape and
(continued...)

aimed to alleviate this problem by allowing "the first person the child told of the offense to testify about what the child said." HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985).[9] Never mentioning any type of evidence other than live testimony by a witness, the legislative-committee report makes multiple references to the outcry witness's ability to "testify as to the child's statements." *Id.*[10]

---

(...continued)

statutory rape prosecutions. In a rape prosecution, a conviction would not be sustained on the uncorroborated testimony of a complainant who failed to make a prompt outcry. *See White v. State*, 478 S.W.2d 506, 508 (Tex. Crim. App. 1972) (testimony of prosecuting witness in rape case "need not be corroborated except in instances of a belated outcry"). Outcry evidence, therefore, was historically admissible at trial, but (1) only for the limited purpose of proving that an outcry had occurred, and (2) the content of the outcry was inadmissible. *See, e.g., Holland v. State*, 802 S.W.2d 696, 699 n.4 (Tex. Crim. App. 1991) (explaining that "outcry or recent complaint evidence is not considered hearsay" because only "bare fact" of outcry, not "content of outcry," admissible); *Sledge v. State*, 686 S.W.2d 127, 130 (Tex. Crim. App. 1984) (noting that "State was entitled to show only the *fact* of 'outcry,' but not the details or underlying circumstances"). The outcry statute modifies this common-law rule by permitting the fact finder to consider the outcry as substantive evidence, but only if certain procedural and content requirements are met. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a) (creating hearsay exception for "statements" of child-complainant that "describe the alleged offense" and are made to "first person" child told about offense); *Martinez*, 178 S.W.3d at 811 (noting that hearsay exception for outcry "carefully limited" and applicable only when "specified conditions" are met).

[9]     In 2009, when the Legislature amended the outcry statute to increase the statutory maximum age of a qualifying child-victim from 12 to 14, the Legislature reaffirmed the purpose of the outcry statute, noting that "an outcry witness may be allowed by the judge to give testimony regarding statements from the victim concerning the alleged offense." *See* HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, H.B. 2846, 81st Leg., R.S. (May 8, 2009). Lawmakers additionally noted that only outcry "testimony" describing "the alleged offense" would be admissible at trial, while statements describing extraneous offenses would be inadmissible. *See* SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 2846, 81st Leg., R.S. (May 19, 2009).

[10]     We may presume that legislators, in enacting the outcry statute, were aware of our case law dealing with the issue of outcry evidence. *See Scott v. State*, 55 S.W.3d 593, 596 (Tex. Crim. App. 2001) (we may "presume the Legislature was aware" of relevant case law in drafting provisions). For more than fifty years, this Court has described "outcry" evidence as consisting of testimony by a

(continued...)

This legislative history of the outcry statute reflects lawmakers' understanding that the first adult in whom a child confides about sexual abuse will usually be a close relative, a trusted teacher, a school counselor, or a neighbor.[11] *See id.* (noting that outcry statute was intended to except from hearsay rule testimony of "people whom these children trust and in whom they have confided"); *see also Martinez*, 178 S.W.3d at 811 (stating that outcry statute serves society's interest in "protecting children in court by allowing the admission of their casual 'street corner' confidences to an adult"); *Ex parte Thompson*, 153 S.W.3d 416, 422 (Tex. Crim. App. 2005) (Cochran, J., concurring) (noting that, in aggravated sexual assault of a child prosecutions, there is typically an "outcry witness, normally the mother or other

---

(...continued)
witness who describes the complainant's first revelations of abuse. *See, e.g.*, *Richardson v. State*, 458 S.W.2d 665, 666 (Tex. Crim. App. 1970) (rejecting appellant's hearsay complaint that "witness testified that [complainant] came to his house immediately after" the assault and reported the rape; testimony relating complainant's "outcry was clearly an exception to the hearsay rule"); *Torbert v. State*, 313 S.W.2d 303, 307 (Tex. Crim. App. 1958) (upholding admissibility of complainant's parents' "testimony . . . as to the outcry made to them"); *Hale v. State*, 300 S.W.2d 75, 76 (Tex. Crim App. 1957) (trial court did not err in permitting father to "recount the outcry made by the child" morning after sexual assault). This historical background strongly suggests that lawmakers would have understood that they were creating a means of admitting the live testimony of the first adult in whom the complainant confided, and not a videotaped statement from the complainant herself.

[11]     The legislative history indicates that lawmakers intended to narrowly limit the scope of the outcry statute to statements made to a trusted confidant of the child. *See* TEX. CODE CRIM. PROC. art. 38.072, §2(a)(3) (permitting only first outcry witness to testify). Prior to enacting the "first person" rule, lawmakers rejected a proposal that would have instead permitted the testimony of trained child advocates. *See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985) (bill's opponents stated that "this exception to the hearsay rule should not be so limited," and that "it would make more sense to allow those specifically trained in child-abuse cases to testify as well about what the victim had previously said to them about the alleged offense"). Instead the Legislature adopted the current provision making admissible only the "testimony" of the "first person a child cries out to." *Id*.

female relative, who testifies that the child told her about the abuse"). In light of the belief that a trusted adult would usually be the outcry witness, it is reasonable to assume that this witness would have neither the opportunity nor the desire to videotape a child's outcry statement as that child reveals for the first time the intimate details of an abusive sexual encounter. Because it envisioned that the child's outcry would take the form of a spontaneous verbal communication to a trusted adult, it is reasonable to conclude that the Legislature did not intend to permit admission of a child's videotaped statements, which suggest a lesser degree of spontaneity (and, perhaps, reliability). We conclude that the legislative report's sole reference to testimony rather than to other forms of evidence, and the unlikelihood that a person trusted by the child would videotape her outcry together compel a conclusion that the Legislature did not intend for admission of videotapes under the outcry statute.

**2. More Specific Law on Same Subject**

The admissibility of a child-victim's pretrial recorded statements is more specifically governed by a related statute set forth at Texas Code of Criminal Procedure Article 38.071, which we refer to as the "video statute."[12] *See* TEX. CODE CRIM. PROC. art. 38.071; TEX.

---

[12] Pursuant to the Texas Family Code, an interview conducted by TDFPS must be audio- or video-recorded if conducted during an active investigation. *See* TEX. FAM. CODE § 261.302(e). Admissibility of such recorded interviews at trial is governed by the video statute, which specifically applies to pretrial videotaped statements from a victim. *See* TEX. CODE CRIM. PROC. art. 38.071. Under the video statute, among additional requirements, a recording of a victim statement is admissible only when the child is unavailable to testify and the trial court finds either (1) that the factual issues were "fully and fairly" inquired into in a "detached manner" by a neutral individual experienced in child-abuse cases who "seeks to find the truth of the matter," or (2) that "the statement was not made in response to questioning calculated to lead the child to make a particular

(continued...)

GOV'T CODE § 311.026; *Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988) (statutes on same or similar subjects may be construed jointly; in case of conflict, specific statute applies over general statute addressing same subject). The video statute creates a hearsay exception for a child's video- or audio-recorded pre-trial statements, but only if stringent requirements are met, including that the child is unavailable to testify at trial and that the interviewer is a neutral person experienced in child-abuse cases or a child-abuse expert. *See* TEX. CODE CRIM. PROC. art. 38.071, §§ 1, 2, 5 (providing for admission of "recording of an oral statement of the child" only if certain requirements are met); *Matz v. State*, 14 S.W.3d 746, 746 (Tex. Crim. App. 2000) (noting that video statute "provides that under certain circumstances, a recording of an oral statement of a child sexual assault victim is admissible"); *Torres v. State*, 33 S.W.3d 252, 256 (Tex. Crim. App. 2000) (describing video statute as governing "special out-of-court circumstances . . . regarding the recording of statements by children"); *Smith v. State*, 88 S.W.3d 643, 647 (Tex. App.—Tyler 2000) (stating that video statute "provides a detailed procedure by which a videotaped interview of a child may be admitted into evidence"), *vacated on other grounds by* 61 S.W.3d 409 (Tex. Crim. App. 2001).[13]

---

(...continued)
statement," that the person conducting the interview is an expert in handling child abuse cases and subject to cross-examination at trial, that law enforcement and attorneys were not present, and that the child was placed under oath prior to making the statement. *See id.* at §§ 1, 2, 5.

[13]    This Court recently held certain provisions of the video statute unconstitutional on Confrontation Clause grounds. *See Coronado v. State*, 351 S.W.3d 315, 317, 329-31 (Tex. Crim.

(continued...)

The legislative history surrounding the video statute reveals that legislators intended that it provide the vehicle driving the admission of videotaped, pretrial statements by child-victims. HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.B. 836, 68th Leg., R.S. (May 24, 1983) (noting that the video statute "would permit the pretrial videotaped testimony of children aged 12 and under to be used as evidence in sexual-abuse cases"). Understanding that "videotaped recordings of a child's testimony are now considered hearsay evidence and they are not admitted in court," lawmakers enacted the video statute so that "pretrial videotapes would be admissible only if they met several listed requirements." *Id.*; *see also* HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 836, 68th Leg., R.S. (May 19, 1983) (noting that video statute "provides for the circumstances under which children who are victims of sexual offenses may visually and aurally record testimony which is admissible in Court"). Lawmakers, thus, viewed the video statute, enacted two years prior to the outcry statute, as the vehicle through which a child's pretrial recorded statements could be offered as substantive evidence at trial.

---

(...continued)
App. 2011) (holding that article 38.071, § 2, provision allowing for use of videotaped *ex parte* interrogatories submitted by defendant and posed by "neutral" forensic interviewer was not "constitutional substitute for live cross-examination and confrontation" of victim). In *Coronado*, we reasoned that the video statute provision allowing for *ex parte* interrogatories violated the Confrontation Clause because there was no "rigorous adversarial testing" of the victim's statements by the "greatest legal engine for uncovering the truth: contemporaneous cross examination." *See id*. at 331; U.S. CONST., amend. VI. We further noted that courts have routinely held that videotaped victim interviews are testimonial and thus inadmissible pursuant to the Confrontation Clause unless the child testifies at trial or the defendant had a prior opportunity for cross-examination. *Coronado*, 351 S.W.3d at 325.

An irreconcilable conflict would exist if both statutes were interpreted to permit the admission of a child's videotaped statements because the outcry statute would create a loophole for admitting evidence that does not meet the requirements of the more stringent video statute. For example, the video statute allows for admission of a child's videotaped statement only when the child is unavailable to testify, but, on the other hand, the outcry statute applies only when the victim is available to testify. *Compare* TEX. CODE CRIM. PROC. art. 38.071, § 1 (trial court must "determine[] that a child younger than 13 years of age would be unavailable to testify in the presence of the defendant"), *with id.* at art. 38.072, § 2(b)(3) (outcry statute hearsay exception applies only if child is younger than 14 years old and child "testifies or is available to testify" at trial).[14] Furthermore, the video statute contains stringent requirements aimed at ensuring the interviewer's neutrality and professionalism, but, on the other hand, the outcry statute merely requires that the statements be reliable and does not require that the outcry witness be neutral. *Compare* TEX. CODE CRIM. PROC. art. 38.071, §§ 2, 5 (under video statute, person taking child's recorded statement must be "neutral individual experienced in child abuse cases that seeks to find the truth of the matter" or an

---

[14]     The legislative-committee report supporting passage of the outcry statute indicates that legislators were mindful of preserving "the defendant's right to confront the witness," and, for this reason, lawmakers included the requirement that the complainant "be available to testify in court." *See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (May 9, 1985). For similar reasons, lawmakers stipulated that a child's videotaped statements would be inadmissible at trial unless the child-complainant had been declared unavailable to testify. *See* HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 66, 70th Leg., 2nd C.S. (July 17, 1987) (amending video statute to provide additional protections under the Confrontation Clause, including that finding of unavailability be "individualized").

"expert in the handling, treatment, and investigation of child abuse cases" whose interview tactics did not consist of calculated questioning designed to elicit particular response), *with id.* at art. 38.072, § 2(b)(2) (under outcry statute, child's statement need only be "reliable based on the time, content, and circumstances of the statement"), *and Sanchez*, 354 S.W.3d at 488 (outcry testimony admissible even if outcry witness biased).

Construing the statutes jointly, we conclude that the admissibility of a child's videotaped statement is governed by the more specific video statute, as opposed to the more general outcry statute. *Cheney*, 755 S.W.2d at 126; TEX. CODE CRIM. PROC. arts. 38.071, 38.072. To permit admission of a complainant's videotaped statement under the more lenient outcry statute would undermine the video statute's rigid unavailability requirement and its requirements aimed at guaranteeing the expertise and neutrality of the interviewer. *See Cheney*, 755 S.W.2d at 126 ("If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision."). Here, the requirements of the video statute were not met because the child was available to testify at trial.[15] *See* TEX. CODE CRIM. PROC. art. 38.071, § 1. We decline to adopt an interpretation of the outcry statute that thwarts the Legislature's clearly stated intent to make a child's videotaped statement admissible as substantive evidence only

---

[15]    *See, e.g., Edwards v. State*, 107 S.W.3d 107, 110-11 (Tex. App.—Texarkana 2003, pet. ref'd) (holding trial court abused its discretion by "admitt[ing] the videotaped interview with the child without any evidence to reflect the child was unavailable to testify," in violation of video statute); *Morales v. State*, 222 S.W.3d 134, 142 (Tex. App.—Corpus Christi 2006, no pet.) ("child-complainant must be unavailable to testify before a videotape of the child's testimony is admissible" under video statute).

under strictly limited circumstances. *See id*. at §§ 1-5.[16]

### 3. Consequences of Any Possible Constructions of Statute

The State argues that the videotape should be admissible under the outcry statute because a video-recorded interview is "a far more accurate representation of a child's statement than a person's memory of the child's statement." But the outcry statute does not provide for admission of the most accurate, or the most detailed, statement from the child. Rather, the Legislature has created a narrow hearsay exception that applies only when the child's statements describe the alleged offense and were made to the first adult outcry witness. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(1)-(3). Additionally, the hearsay exception for outcry is applicable only if the statute's stringent procedural requirements are met. *See id*. at. § 2(b); *Long*, 800 S.W.2d at 547 (holding that outcry witness "testimony is only admissible as a statutory exception to the hearsay rule if its procedures are followed"). The statute's explicit content and procedural requirements are mandatory, even though they may at times result in admission of a less detailed statement from the child.[17]

---

[16]     Relying on this same rationale, we have previously held that we would not allow one hearsay exception to be used as a "back door" for admitting evidence expressly excepted from another hearsay exception, thereby indicating legislative intent to maintain the normal operation of the hearsay rule with respect to that evidence. *See Cole v. State*, 839 S.W.2d 798, 811 (Tex. Crim. App. 1992) (op. on reh'g) (law enforcement investigative reports do not fall within hearsay exception for business records).

[17]     Presiding Judge Keller suggests that we should analyze the outcry statute in the same way that we analyze other hearsay exceptions, such as excited utterances, where we determine whether the evidence supports that exception, but then permit that evidence to be introduced through any form, such as testimony or a recording of a 911 call. *See Gardner v. State*, 306 S.W.3d 274, 288-92 (Tex. Crim. App. 2009). This comparison, however, is inapplicable here for two reasons. First, to

(continued...)

Furthermore, although the legislative history of both the video and outcry statutes indicates lawmakers' concern about the reliability of a child's out-of-court statements, the Legislature was also focused on excluding unfairly prejudicial evidence, particularly videotaped victim statements, and preserving a defendant's right of confrontation. *See* HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 66, 70th Leg., 2nd C.S. (July 17, 1987) (indicating legislative intent to tighten restrictions on use of videotaped testimony to avoid potential Confrontation Clause violations and noting that videotape procedure had been, in some cases, abused "to achieve maximum effect on the jury"). By carefully examining the various concerns inherent in the admission of hearsay evidence, it is reasonable to conclude that the Legislature narrowly permitted the introduction of outcry statements through witness testimony, but excluded videotaped statements that did not meet

---

(...continued)

constitute as an excited utterance, a statement must relate to a startling event or condition and have been made while the declarant was under the stress of excitement caused by the event or condition. *See* TEX. R. EVID. 803(2); *Zuliani v. State*, 97 S.W.3d 589, 595-96 (Tex. Crim. App. 2003). Nothing in the excited utterance hearsay exception limits the form of the evidence in any way. In contrast, the outcry statute clearly contemplates the role of an outcry "witness" through whom the child's statement will be offered, and is thus not wholly silent with respect to how the outcry evidence will be presented at trial. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2. Second, as explained in more detail above, the legislative history of the outcry and video statutes reveals that the Legislature intended to require that videotaped victim statements meet certain requirements aimed at guaranteeing the neutrality of the interviewer and unavailability of the child, whereas the outcry statute was intended to be limited to statements made to the first outcry witness. Because videotapes may be admissible generally for other hearsay exceptions, this does not mean that a statute governing a very specific type of hearsay may not exclude videotapes and instead require that the proper outcry witness actually testify. *See* TEX. R. EVID. 101(c) (Code of Criminal Procedure provisions take precedence over Texas Rules of Evidence; inconsistencies to be removed "by reasonable construction"). We are unpersuaded by the argument that because videotapes are generally admissible under the rules of evidence they must, therefore, be permitted here.

the more particularized admission requirements intended to guarantee the neutrality of the interviewer and to protect a defendant's rights under the Confrontation Clause.  Contrary to the State's suggestion, the reliability of the child's statement was not lawmakers' sole concern when they enacted the outcry statute. *See Garcia,* 792 S.W.2d at 91 (in creating outcry statute, "[L]egislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children").

### III. Conclusion

Based on our analysis of the statutory language in conjunction with an examination of the applicable extra-textual factors, we conclude that outcry statute does not permit admission of video-recorded statements of a complainant. We, therefore, affirm the court of appeals's judgment reversing appellant's conviction for indecency with a child by contact.

Delivered: April 17, 2013

Publish